## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| NERY VIDAL REMIREZ ZAPET, | |
| Petitioner, | |
| v. | Civil Action No. 1:25-cv-07085-VMC |
| LADEON FRANCIS, *ICE Atlanta Field Office Director*, TODD LYONS, *in his official capacity as Acting Director of Immigration and Customs Enforcement*, KRISTI NOEM, *Secretary of Homeland Security*, PAMELA BONDI, *U.S. Attorney General*, | |
| Respondents. | |

### ORDER

This matter is before the Court on Petitioner's Motion for Temporary Restraining Order ("TRO") and/or Preliminary Injunction. ("Motion," Doc. 3). Respondents filed a response in opposition (Doc. 11) and Petitioner filed a reply (Doc. 13).

### Background

Petitioner Nery Vidal Ramirez Zapet has resided in the United States, without inspection, since 2015. (*See* Doc. 11 at 1). On December 8, 2025, Petitioner and other occupants of a vehicle were arrested by an Immigration and Customs

Enforcement ("ICE") Official during a traffic stop. (Doc. 8 ¶ 3).[1] Petitioner was taken into custody in this District, served a Notice to Appear on January 6, 2026, and charged with removability under 28 U.S.C. § 1225. (Docs. 11 at 2–3; 11-3 at 4).

On December 12, 2025, while currently in this District and before being transferred to the Stewart Detention Center, Petitioner filed his Petition for Habeas Corpus ("Petition"). (*See* Docs. 1; 11 at 3). Petitioner then filed an Amended Petition arguing, as he did in his original filing, that his detention is unlawful and based on erroneous statutory interpretation. (*See generally* Docs. 1; 8). As a result of that interpretation and his continued confinement thereunder, he contends that the Government has unlawfully arrested him in violation of his Fifth Amendment right to due process, the Administrative Procedures Act ("APA"), the Immigration and Nationality Act ("INA"), the relevant bond regulations, 8 U.S.C. § 1226, the *Accardi* doctrine, and acted ultra vires. (*See* Doc. 8 ¶¶ 135–196).

Petitioner has now moved for a temporary restraining order and preliminary injunction. (*See* Doc. 3). He asks the Court to:

> (1) order Respondents to Show Cause why this Writ should not be granted within 3 days pursuant to §2243; (2) Order Respondents to immediately release Petitioner[]; (3) Schedule an Evidentiary hearing on the matter in order to hear testimony from Petitioners regarding the circumstances leading to their arrest;

---

[1] The parties disagree about the circumstances surrounding Petitioner's arrest, but the Court need not resolve it for purposes of this order. (*See* Docs. 11 at 2–3; 13 at 5–8).

> (4) ENJOIN Respondents from re-detaining Petitioner[] unless [he has] committed a new violation of any federal, state, or local law, or [has] failed to attend any properly noticed immigration or court hearing or are subject to detention pursuant to a final order of removal.

(Doc. 3 at 4–5).[2]

## Legal Standard

To obtain a temporary restraining order or preliminary injunction, the moving party must demonstrate "(1) a substantial likelihood of ultimate success on the merits; (2) the TRO is necessary to prevent irreparable injury; (3) the threatened injury outweighs the harm the TRO would inflict on the non-movant; and (4) the TRO would serve the public interest." *Ingram v. Ault*, 50 F.3d 898, 900 (11th Cir. 1995); *Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1035 (11th Cir. 2001). Where, as here, the government is the opposing party, the third and fourth factors merge. *Gonzalez v. Gov. of Ga.*, 978 F.3d 1266, 1271 (11th Cir. 2020). A temporary restraining order "is an extraordinary and drastic remedy that should not be granted unless the movant clearly carries its burden of persuasion on each of these prerequisites." *Suntrust Bank v. Houghton Mifflin Co.*, 252 F.3d 1165, 1166 (11th Cir. 2001) (per curiam).

---

[2] He also requested that the Court grant any additional relief proper and just and schedule an "expedited emergency hearing." (Doc. 3 at 5).

## Discussion

The Court now turns to the merits of Petitioner's Motion. The dispositive issue is whether Petitioner is detained subject to 8 U.S.C. §§ 1225(b) or 1226(a). If it is the former, Petitioner's continued detention without a bond hearing is lawful because he is not entitled to be released on bond. But if it is the latter, Petitioner has been denied the procedural protections under § 1226 and its accompanying regulations.

## I.    Likelihood of Success on the Merits

The success of most of Petitioner's claims depends on this Court's interpretation of 8 U.S.C. §§ 1225(b) and 1226(a), which govern the detention of noncitizens prior to a final order of removal.

Section 1225 dictates that noncitizens who are "applicant[s] for admission . . . shall be detained for [removal proceedings]." 8 U.S.C. § 1225(b)(2)(A). An "applicant for admission" is "[a]n alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). "Admission" and "admitted" are defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). "A noncitizen detained under Section 1225(b)(2) may be released only if he is paroled . . . under 8 U.S.C. § 1182(d)(5)(A)." *Gomes v. Hyde*, No. 1:25-cv-11571, 2025 WL 1869299, at *2 (D. Mass. July 7, 2025).

On the other hand, Section 1226 states that "[o]n a warrant issued by the Attorney Geneal, an alien may be arrested and detained pending" removal proceedings. 8 U.S.C. § 1226(a). Pending a removal decision, the Attorney General may continue to detain the arrested alien or may release the alien on bond or conditional parole. *Id.* §§ (a)(1)–(a)(2). However, "[f]ederal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018). The initial custody and bond determination is made by the arresting officer. 8 C.F.R. § 1236.1(c)(8). In making the bond determination, the alien must demonstrate to the officer that his release "would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). That officer's decision can then be appealed to an immigration judge. *See* 8 C.F.R. § 1003.19(a). In such an appeal, "the immigration judge is authorized to exercise the authority in section [1226] . . . to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released, as provided in § 1003.19 of this chapter." 8 C.F.R. § 1236.1(d)(1).

Here, Petitioner contends that he is subject to Section 1226 and not Section 1225 and is therefore entitled to a bond hearing. (*See* Doc. 8 ¶¶ 4–5). Petitioner argues that he has received no such hearing to date because of a change in ICE's policy that now interprets the INA to treat all noncitizens who entered the country

5

without inspection, such as Petitioner, as "arriving aliens" or "applicants for admission" subject to detention under 8 U.S.C. § 1225(b). (*See id.*). However, ICE's classification is contrary to both statutes and regulations. *See* 8 U.S.C. § 1226(a); 8 C.F.R. § 1236.1(c)(8); 8 C.F.R. § 1003.19. Thus, the Court agrees that 8 U.S.C. § 1225 does not apply to Petitioner because he is not an applicant seeking admission and he is therefore entitled to a hearing by 8 U.S.C. § 1226(a). *See Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL 2496379, at *6 (E.D. Mich. Aug. 29, 2025) ("Noncitizens who are just 'present' in the country . . . who have been here for years upon years and never proceeded to obtain any form of citizenship (e.g. asylum, permanent residency, refugee status, visas, etc.) — are not "seeking" admission."); *Barrera v. Tindall*, No. 3:25-CV-541, 2025 WL 2690565, at *4 (W.D. Ky. Sept. 19, 2025) ("Noncitizens who are present in the country for years, like Barrera who has been here 20 years, are not actively "seeking admission."). The Court's conclusion follows that of other courts in this district and across the country. (*See* Docs. 11 at 14–15; 13 at 1) (citing cases). Indeed, a district judge recently entered a final judgment declaring that a class of aliens, which could include Petitioner, cannot be detained under 8 U.S.C. § 1225(b)(2); instead, they must be detained under 8 U.S.C. § 1226(a). (Docs. 12 at 1; 13 at 14–15) (citing *Bautista v. Santacruz*, No. 5:25-CV-01873, 2025 WL 3289861 (C.D. Cal. Dec. 18, 2025)).

Accordingly, Petitioner has demonstrated a substantial likelihood of success on his claims that his continued detention without a bond hearing, as provided by 8 U.S.C. § 1226(a) and the relevant bond regulations, is unlawful. As a result of this finding, the Court does not need to reach Petitioner's claims under the Due Process Clause, APA, and *Accardi* doctrine.

## II.    Irreparable Harm

The Court now considers whether Petitioner would suffer irreparable harm in the absence of an injunction in his favor. Petitioner contends that his continued unlawful detention is "a paradigmatic irreparable injury," and that "each additional day of confinement compounds the deprivation of liberty and cannot be remedied by money damages." (Doc. 3-1 at 11). He further argues that his continued detention "impairs access to counsel and the ability to prepare [his] case," and that "[t]he only way to prevent ongoing harm is immediate injunctive relief." (*Id.* at 11–12).

The Court agrees. Petitioner's loss of liberty "cannot be undone through monetary remedies." *N.E. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990). He will continue to be separated deprived of his liberty, and but-for the Court's intervention, Petitioner would suffer irreparable harm.

### III.    Balance of the Equities and Public Interest

The Court next turns to whether Petitioner has demonstrated that the balance of the equities and public interest tilt in favor of granting the TRO. Where, as here, the government is the opposing party, the third and fourth factors merge. *Gonzalez*, 978 F.3d at 1271. The Court finds that these factors counsel in favor of granting a temporary restraining order.

With respect to the balance of the equities, Petitioner would suffer far greater harm if the Court does not enjoin Respondents than Respondents would suffer if it did. Petitioner—who remains unlawfully detained—would continue to be deprived of his liberty, and subject to transfer to any ICE or DHS facility as either agency may direct. Even if the harm to his liberty was not enough, the Ninth Circuit has noted that detainees in ICE custody often receive "subpar medical and psychiatric care in ICE detention facilities," in addition to the "economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to children of detainees whose parents are detained." *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017).

In contrast, the harm Respondents would suffer if enjoined is lesser. Respondents would have to afford Petitioner—who has no criminal history other than a single traffic offense—a bond hearing as federal regulations require. Respondents cannot claim to be harmed by a directive to follow federal law. The

only harm Respondents would suffer if enjoined is that they could no longer detain Petitioner without first affording him a bond hearing and determining that he is either a danger to the community or a flight risk. On balance, these harms cut in favor of issuing a temporary restraining order.

The same is true of the public interest. "[W]hile Respondents and the public have a significant interest in ensuring that persons subject to immigration proceedings do not commit crimes or evade law enforcement, there is no showing that the facts here implicate these concerns." *Maldonado v. Olson*, 795 F. Supp. 3d 1134, 1155 (D. Minn. 2025). In contrast, "there is substantial public interest in ensuring government agencies abide by federal laws." *Doe 1 v. Bondi*, 780 F. Supp. 3d 1277, 1286 (N.D. Ga. 2025) (collecting cases). Accordingly, the Court finds that Petitioner has met his burden with respect to all four factors. Thus, Petitioner is entitled to injunctive relief.

## IV.    Remedy

Having concluded that Petitioner is entitled to an injunction, the Court must now determine its scope. "Crafting a preliminary injunction [or TRO] is an exercise of discretion and judgment, often dependent as much on the equities of a given case as the substance of the legal issues it presents." *Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 579 (2017). Interim relief is meant "not to conclusively determine the rights of the parties, . . . but to balance the equities as

the litigation moves forward." *Id.* at 580 (citation omitted). The Court "'need not grant the total relief sought by the applicant but may mold its decree to meet the exigencies of the particular case.'" *Id.* (quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2947 at 115 (3d ed. 2013)).

Here, Petitioner seeks several forms of relief, which include:

> (1) order Respondents to Show Cause why this Writ should not be granted within 3 days pursuant to §2243; (2) Order Respondents to immediately release Petitioner[]; (3) Schedule an Evidentiary hearing on the matter in order to hear testimony from Petitioners regarding the circumstances leading to their arrest; (4) ENJOIN Respondents from re-detaining Petitioner[] unless [he has] committed a new violation of any federal, state, or local law, or [has] failed to attend any properly noticed immigration or court hearing or are subject to detention pursuant to a final order of removal.

(Doc. 3 at 4–5).[3]

The Court will order the Respondents to afford Petitioner a bond hearing within ten days of the date of this Order. The Court cannot, however, order Petitioner's release on a preliminary basis. The regulations provide only for a bond hearing before a neutral immigration judge, not for Petitioner's release if he is not afforded one. Therefore, Respondents must provide Petitioner with the bond hearing that Section 1226 and its accompanying regulations require.

---

[3] Petitioner also made additional requests. *See* supra note 2.

V.    **Security**

Finally, the Court exercises its discretion to waive the bond requirement set forth in Rule 65(c) of the Federal Rules of Civil Procedure at this time. *BellSouth Telecomms. Inc. v. MCImetro Access Transmission Servs., LLC*, 435 F.3d 964, 971 (11th Cir. 2005); *Mama Bears of Forsyth Cnty. v. McCall*, 642 F. Supp. 3d 1338, 1359–61 (N.D. Ga. 2022).

### Conclusion

Petitioner's Motion for a Temporary Restraining Order and Preliminary Injunction (Doc. 3) is **GRANTED in part** as follows:

Respondents must provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within ten days of the date of this Order. If Respondents do not provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) as required, it is further **ORDERED** that Petitioner must be released from detention no later than the eleventh day after the entry of this Order.

Respondents are further **ENJOINED** from pursuing detention of Petitioner on the basis of 8 U.S.C. § 1225(b)(2)(A), which is inapplicable. If Petitioner is subject to detention, it must be pursuant to the discretionary provisions of 8 U.S.C. § 1226(a).

This Temporary Restraining Order **SHALL EXPIRE** at 11:59 p.m. on January 8, 2026. The Court finds good cause to extend the TRO beyond the typical 14-day

period so that the parties can provide information about the outcome of Petitioner's hearing in immigration court set for January 6, 2026. A hearing on whether a preliminary injunction should issue is set for Wednesday, January 7, 2026, at 1:30 p.m. in Courtroom 2105, United States Courthouse, 75 Ted Turner Drive, S.W., Atlanta, Georgia. Any request for a Zoom hearing should be made by January 5, 2026. It is

FURTHER ORDERED that Respondents' Unopposed Emergency Motion for Extension of Time and Pages (Doc. 10) is **GRANTED in part** as to the request for more pages and **DENIED as moot** as to the extension of time.

**SO ORDERED** this 22nd day of December, 2025.

Victoria Marie Calvert
United States District Judge